## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re: | **Chapter 11** |
| **ABEINSA HOLDING INC., et al.,** | **Case No. 16-10790 (KJC)** |
| Reorganized and Liquidating Debtors.[1] | **(Jointly Administered)** |
| **ABEINSA LITIGATION TRUST,** | |
| Plaintiff, | |
| v. | **Adversary Proceeding** |
| **CROWN FINANCIAL, LLC,** | **Case No. 18-50316 (LSS)** |
| Defendant. | |

## MEMORANDUM OF LAW IN OPPOSITION TO CROWN FINANCIAL, LLC'S MOTION FOR SUMMARY JUDGMENT AND IN SUPPORT OF THE CROSS-MOTION FOR SUMMARY JUDGMENT OF DRIVETRAIN  LLC, AS LITIGATION TRUSTEE

**HOGAN LOVELLS US LLP**

David Dunn (admitted *pro hac vice*)
Allison Wuertz (admitted *pro hac vice*)

875 Third Avenue
New York, NY 10022
Telephone: (212) 918-3000
Facsimile: (212) 918-3100
E-mail:   david.dunn@hoganlovells.com
               allison.wuertz@hoganlovells.com

**MORRIS, NICHOLS, ARSHT & TUNNELL LLP**
Robert J. Dehney (No. 3578)
Andrew R. Remming (No. 5120)
Matthew O. Talmo (No. 6333)
1201 N. Market Street, PO Box 1347
Wilmington, DE 19899-1347
Telephone: (302) 658-9200
Facsimile: (302) 658-3989
E-mail: rdehney@mnat.com
aremming@mnat.com
mtalmo@mnat.com

Dated:  May 5, 2020

*Counsel for Drivetrain, LLC as Litigation Trustee*

---

[1]        The Reorganized Debtors in these chapter 11 cases, together with the last four digits of each Reorganized Debtor's federal tax identification number, are as follows: Abeinsa Holding Inc. (9489); and Abengoa Solar, LLC (6696).  The Liquidating Debtors in these chapter 11 cases, together with the last four digits of each Liquidating Debtor's federal tax identification number, are as follows: Inabensa USA, LLC (2747); and Abengoa Bioenergy Holdco, Inc. (8864).

# **TABLE OF CONTENTS**

TABLE OF CONTENTS............................................................................................II

TABLE OF AUTHORITIES .................................................................................. IV

PRELIMINARY STATEMENT ..............................................................................1

STATEMENT OF FACTS ........................................................................................2

PROCEDURAL HISTORY.......................................................................................3

      A.      The Bankruptcy Proceedings .........................................................3

      B.      The Crown and Synflex Claims.....................................................4

      C.      The Adversary Proceeding.............................................................5

ARGUMENT .............................................................................................................5

I.      LEGAL STANDARDS ......................................................................................5

      A.      Summary Judgment ........................................................................5

      B.      Law of the Case .............................................................................6

II.     THE LITIGATION TRUSTEE IS ENTITLED TO SUMMARY JUDGMENT ON ITS CLAIMS UNDER SECTION 7031.................................................................................7

      A.      This Court Already Has Determined That Crown Is an Assignee of Void Invoices.7

      B.      The Litigation Trustee Is Entitled to Recover Payments Made to Crown on Account of the Void Synflex Invoices...................................................8

      C.      Crown's Arguments Neither Defeat the Litigation Trustee's Entitlement to Summary Judgment nor Warrant Summary Judgment in Crown's Favor..............9

III.    THE LITIGATION TRUSTEE IS ENTITLED TO SUMMARY JUDGMENT ON ITS CLAIM FOR TURNOVER.......................................................................................11

IV.   NONE OF CROWN'S ARGUMENTS ENTITLE IT TO SUMMARY JUDGMENT ON THE TURNOVER CLAIM. ...................................................................................13

      A.      The Assignment Notice Does Not Provide a Basis for ATMGP's Payments to Crown...........................................................................................13

      B.      The Status of the Synflex Contracts with ATMGP Is Irrelevant ..........................15

      C.      The Turnover Statute Is Not Inapplicable..............................................16

CONCLUSION.............................................................................................................17

## <u>TABLE OF AUTHORITIES</u>

**Federal Cases**

*Am. Home Mortg. Corp. v. Showcase of Agents, LLC* (*In re Am. Home Mortg. Holding*),
  458 B.R. 161 (Bankr. D. Del. 2011) ................................................................................12

*B.D.W. Assoc's Inc. v. Busy Beaver Bldg. Ctrs., Inc.*,
  865 F.2d 65 (3d Cir. 1989).......................................................................................12, 17

*Bos. Sci. Corp. v. Cordis Corp.*,
  777 F. Supp. 2d 783 (D. Del. 2011)..................................................................................6

*Burtch v. Masiz* (*In re Vaso Active Pharmaceuticals, Inc.*),
  500 B.R. 384 (Bankr. D. Del. 2013), *aff'd*, 537 B.R. 182 (D. Del. 2015) ..........................7

*CRV Imperial-Worthington, LP v. Gemini Ins. Co.*,
  770 F. Supp. 2d 1074 (S.D. Cal. 2010)...........................................................................15

*Dynacraft Bsc, Inc. v. Pac. Cycle, Inc.*,
  No. 16-cv-04334-BLF, 2017 WL 57341 (N.D. Cal. Jan. 5, 2017)...................................14

*In re Fleming Cos., Inc.*,
  No. 03-10945(MFW), 2004 WL 385517 (Bankr. D. Del. Feb. 27, 2004), *aff'd*, 499 F.3d
  300 (3d Cir. 2007)............................................................................................................9

*Giuliano v. Fairfield Grp. Healthcare Ctrs. Ltd. P'Ship* (*In re Lexington Healthcare Grp. Inc.*),
  363 B.R. 713 (Bankr. D. Del. 2007) ................................................................................12

*Gottlieb v. Gemilyan* (*In re Yurdumyan*),
  Adv. No. 1:18-ap-01030-MT, 2018 WL 4042817 (Bankr. C.D. Cal. Aug. 23, 2018) ........8

*LNV Corp. v. Ad Hoc Grp. Of Second Lien Creditors* (*In re La Paloma Generating Co., LLC*),
  Adv. Pro. No. 19-50110 (JTD), 2020 WL 224569 (Bankr. D. Del. Jan. 13, 2020).........6, 7

*Medtronic Ave, Inc. v. Advanced Cardiovascular Sys., Inc.*,
  247 F.3d 44 (3d Cir. 2001)................................................................................................9

*Michelin Tires (Canada) Ltd. v. First Nat'l Bank of Boston*,
  666 F.2d 673 (1st Cir. 1981)...........................................................................................11

*Newman v. Tybert* (*In re Steel Wheels Transport, LLC*),
  Adv. No. 07-02675 DHS, 2011 WL 5900958 (Bankr. D.N.J. Oct. 28, 2011)...................12

*Pharmacy Corp. of Am./Askari Consol. Litig.*,
  No. CV 16-1123-RGA, 2020 WL 1964175 (D. Del. Apr. 23, 2020) ..................................6

*In re Proxim Corp.*,
  369 B.R. 812 (Bankr. D. Del. 2007) ..................................................................................6

*Rockridge Trust v. Wells Fargo, N.A.*,
    985 F. Supp. 2d 1110 (N.D. Cal. 2013) ...........................................................................15

*Stanziale v. Pepper Hamilton LLP (In re Student Finance Corp.)*,
    335 B.R. 539 (D. Del. 2005)...........................................................................................17

*Tolliver v. Trinity Par. Found.*,
    723 F. App'x 166, 170 (3d Cir. 2018) ..............................................................................6

*Zazzali v. Minert (In re DBSI)*,
    468 B.R. 663, 669 (Bankr. D. Del. 2011) ......................................................................12

**State Cases**

*MW Erectors, Inc. v. Niederhauser Ornamental & Metal Works Co.*,
    36 Cal. 4th 412 (Cal. 2005)...........................................................................................10

*Wilson v. Steele*,
    211 Cal. App. 3d 1053 (1989) .......................................................................................16

*Zars v Brownlow*,
    No. 07-07-00303-CV, 2013 WL 3355660 (Tex. App. June 28, 2013)............................14

**Federal Statute**

11 U.S.C. § 542.....................................................................................................................11, 16

**Federal Rules**

Fed. R. Civ. P. 54(c) .....................................................................................................................6

Fed. R. Civ. P. 56.....................................................................................................................5, 6

**State Statutes**

Cal. Bus. & Professions Code § 7031(a) ......................................................................................8

Cal. Bus. & Professions Code § 7031(b) ............................................................................. passim

U.C.C. 9-404(b) ....................................................................................................................10, 11

## PRELIMINARY STATEMENT

California has a strong, clear public policy barring unlicensed construction contractors from performing any work in the State.  That policy is codified in a series of statutory sections, including Section 7031 of the California Business and Professions Code which prevents a contractor from maintaining any action, in law or equity, to collect for any work performed in the State without the proper licenses and authorizes any party that retains an unlicensed contractor to recover "all compensation paid" for such work.  Section 7031 is absolute in its prohibition and its effect.  It applies even if the owner or other contracting party *knew* of the contractor's unlicensed status at the time of contracting, and even if the other party acted in bad faith.  While extreme in its terms, both the plain language of the statute and the pertinent legislative history make clear that it effectuates a critical public policy.  This adversary proceeding seeks to vindicate rights expressly granted by Section 7031(b).  Drivetrain LLC, as Litigation Trustee (the "Litigation Trustee") seeks to recover amounts that Abener Teyma Mojave General Partnership ("ATMGP") paid to Crown Financial, LLC ("Crown") on account of invoices for unlicensed construction work performed in California by an unlicensed contractor – Synflex.

The key facts are not in dispute.  The Synflex invoices are and were void under California law.  Crown, as Synflex's factor, took assignment of Synflex invoices for unlicensed work.  ATMGP paid $3,575,828.39 to Crown on account of those invoices.  Beyond these facts, the issues are purely legal and applicable law fully supports an award of summary judgment in the Litigation Trustee's favor.

The Litigation Trustee is entitled to summary judgment on its third and fourth causes of action for violation of Section 7031 and statutory disgorgement pursuant to Section 7031(b).  Section 7031(b) permits a hiring party to recover any amounts paid for work performed by an unlicensed contractor.  Crown, as assignee, stands in the shoes of its unlicensed assignor Synflex

and, therefore, is the appropriate defendant from which to recover the amounts ATMGP paid directly to Crown on account of void Synflex invoices.  Second, the Litigation Trustee is entitled to turnover because there is no genuine dispute that the $3,575,828.39 is property of the estate and all other elements of the turnover claim are met.

## STATEMENT OF FACTS

### Synflex Performs Work While Unlicensed

ATMGP served as the general contractor for the construction of the Mojave Solar Power Plant Project (the "Project") in San Bernardino County, California.  ATMGP subcontracted with Synflex to supply and install insulation and other materials on the Project pursuant to three written subcontract agreements.  *See* Ex. A (relevant excerpts from contract dated September 19, 2013); Ex. B (relevant excerpts from contract dated October 7, 2013); Ex. C (relevant excerpts from contract dated December 10, 2013).[2]  Each of these agreements, as required by applicable California law, expressly obligated Synflex to maintain proper licensure for the performance of the work contemplated.  *See* Ex. A at 5; Ex. B at 5; Ex. C at 5.  Despite its statutory and contractual obligation, Synflex was unlicensed when it performed work on the Project.  Ex. D (California Contractors State License Board Certification of Records).

### Crown Factors Synflex's Invoices

Synflex and Crown entered into an Account Purchase Agreement ("APA") on or about April 4, 2014, between five and eight months after the original Synflex subcontracts with ATMGP.  Pursuant to that factoring agreement, Synflex agreed to submit its accounts in the form

---

[2]    The complete Synflex agreements are available in the main bankruptcy proceeding, *In re Abeinsa Holding Inc.*, Case No. 16-10790 (KJC), ECF No. 1747-1, 1747-2, and 1747-3.  ECF citations preceded by "Main Docket" are to the docket for the main bankruptcy proceeding.  All other ECF citations are to the docket in this adversary proceeding.

of invoices to Crown for review.  *See* Ex. E (APA) at 1.  Crown then had the option, but no

obligation, to accept assignment of whichever of those invoices it chose.  *Id.* at 1-2.

Also on or about April 4, 2014, Crown sent a letter to ATMGP notifying it of the

assignment of Synflex's payment rights to Crown, and requesting that ATMGP direct all

payments due to Synflex for the assigned invoices to Crown instead (the "Assignment Notice").[3]

*See* Ex. F (Assignment Notice).  The letter described in plain terms the nature of the transaction

that had taken place: Synflex "had assigned all rights, title, and interest in its accounts receivable

to Crown."  *See id.* at 1.  The letter requested that ATMGP do two things:  (1) alter wiring

instructions to send payments already due to Synflex to Crown instead; and (2) confirm that

invoices listed in an attachment were "in line for payment and the payment obligation of

[ATMGP] is not subject to any offsets, back charges, or disputes of any kind of nature."  *See id.*

at 1.

Pursuant to the APA, Crown acquired assignment of invoices from Synflex totaling

$5,415,286.76.  Crown Ans. at ¶ 22.  Before its bankruptcy filing, ATMGP paid Crown

$3,575,828.39 on account of Synflex's invoices.  *Id.*

## PROCEDURAL HISTORY

### A.    The Bankruptcy Proceedings

On March 29, April 6, April 7, and June 12, 2016, the Debtors commenced Chapter 11

cases by filing voluntary petitions for relief under the Bankruptcy Code.  The Debtors were

organized into four groups:  (i) the EPC Reorganizing Debtor Group (which includes ATMGP);

(ii) the Solar Reorganizing Debtor Group; (iii) the EPC Liquidating Debtor Group; and (iv) the

---

[3]    This letter is what Crown dubs the "No Offset Agreement" and relies on as the alleged independent contract with ATMGP.

3

Bioenergy and Maple Liquidating Debtor Group.  The Debtors' Plan of Reorganization and Liquidation Plan was likewise composed of four separate plans, one for each Debtor group.

On December 15, 2016, the Court entered the Order Confirming Debtors' Modified First Amended Plans of Reorganization and Liquidation.  The plans became effective on March 31, 2017.  As of that date, the Debtors' Chapter 11 cases were partially substantively consolidated.[4]

As part of the reorganization plan, Drivetrain was named as Litigation Trustee for certain claims related to the EPC Reorganizing Debtors.  *See* Ex. G (Litig. Trust Agreement) at 1.  The Litigation Trustee was given responsibility for, among other things, "investigating, prosecuting, settling, liquidating, or disposing of the Litigation Trust Causes of Action."  *Id.* at 2.  "Litigation Trust Causes of Action" include "[a]ll causes of action, claims, and counterclaims in any actions, mediations, arbitrations, and other proceedings with respect to Distribution International, Crown Financial Group, Inc., Crown Solutions Company, and any related subsidiaries and affiliates."  *Id.* at S-3.

### B.      The Crown and Synflex Claims

On June 20, 2016 Crown filed a Proof of Claim against ATMGP for $2,022,527.29.  *See* Ex. H (Claim No. 114).  The Litigation Trustee objected to Crown's claim on the basis that Crown has no "right to payment" under Section 101(5) of the Bankruptcy Code and failed to provide sufficient documentation to show the basis for the claim.  *See* Main Docket, ECF Nos. 1609, 1609-1, 1609-2, 1609-3.  Synflex also filed a Proof of Claim against ATMGP in the amount of $11,192,133.12 for unpaid invoices, many of which overlapped with those invoices that Crown asserted as the basis for its claim.  *See* Ex. I (Proof of Claim No. 302).  The Responsible Person, acting for the Reorganized Debtor, objected to Synflex's claim.

---

[4]        The Debtors' other Chapter 11 cases were closed on May 3, 2017.  *See* Main Docket, ECF No. 1303.

Following discovery, including the exchange of documents and depositions, an in-person hearing, and post-hearing briefing, on March 26, 2019, the Court issued an opinion and order sustaining the Litigation Trustee's objections to both the Synflex and Crown claims. *See* Ex. J (Op.) at 13. The Court found that the Synflex invoices were void and Synflex had no claim or entitlement to payment. *Id.* at 5-10. It further found that Crown was an assignee of invoices issued by Synflex, and that its rights were limited to those of an assignee. *Id.* at 11. Because the underlying invoices were void, Crown, as Synflex's assignee, had no entitlement to payment on the Synflex invoices it had obtained. *Id.*. The Court found the question of whether Crown had an independent contract with ATMGP to be irrelevant given that the underlying Synflex invoices were void. *Id.*.

### C.    The Adversary Proceeding

While the parties were litigating the validity of Synflex's and Crown's claims, the Litigation Trustee filed this adversary proceeding against Crown. The adversary proceeding alleges four claims: (1) disallowance of Crown's claim; (2) turnover of the $3,575,828.39 ATMGP paid to Crown; (3) violation of Section 7031; and (4) statutory disgorgement pursuant to Section 7031(b). The Complaint seeks disallowance of Crown's claim, a declaration that the Synflex invoices are void, and a money judgment against Crown in the amount of no less than $3,575,828.39.

## ARGUMENT

### I.    LEGAL STANDARDS

### A.    Summary Judgment

Pursuant to Rule 56 of the Federal Rules of Civil Procedure, summary judgment should be granted where, as here, "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue of material fact

5

and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c); *accord*

*Tolliver v. Trinity Par. Found.*, 723 F. App'x 166, 170 (3d Cir. 2018); *Pharmacy Corp. of*

*Am./Askari Consol. Litig.*, No. CV 16-1123-RGA, 2020 WL 1964175, at *2 (D. Del. Apr. 23,

2020). The movant bears the initial burden of demonstrating an absence of disputed material

facts and the reasons that it is entitled to judgment. *Pharmacy Corp.*, 2020 WL 1964175, at *2.

When only questions of law are in dispute at summary judgment, all that is left is for the

court to determine in which party's favor the legal issues must be resolved. *In re Proxim Corp.*,

369 B.R. 812, 816-17 (Bankr. D. Del. 2007) (determining legal issues and entering judgment

after neither party raised any factual issues in summary judgment). "[W]hen one party moves for

summary judgment against an adversary, Fed. R. Civ. P. 54(c) and 56, when read together, give

the court the power to render a summary judgment for the adversary if it is clear that the case

warrants that result, even though the adversary has not filed a cross-motion for summary

judgment." *Bos. Sci. Corp. v. Cordis Corp.*, 777 F. Supp. 2d 783, 793 (D. Del. 2011) (internal

quotation marks and citations omitted).

### B.    Law of the Case

The Court already has decided most of the key factual and legal issues in this adversary

proceeding. *See* Ex. J at 2-11. Under the law of the case doctrine, this Court should be guided by

the findings of fact and conclusions of law in that prior decision. *LNV Corp. v. Ad Hoc Grp. of*

*Second Lien Creditors* (*In re La Paloma Generating Co., LLC*), Adv. Pro. No. 19-50110 (JTD),

2020 WL 224569, at *3 (Bankr. D. Del. Jan. 13, 2020) ("The law of the case doctrine bars the

relitigation of matters once decided during the course of a continuing lawsuit. The doctrine also

applies to subsequent rulings by the same judge in the same case or a closely related one and to

rulings by different judges at the same level. The doctrine applies to . . . findings made in a main

bankruptcy proceeding and is binding on parties to a subsequent adversary proceeding." (internal

quotation marks and citations omitted)).  The appeal of the Court's decision disallowing Crown's

claim should not prevent the Court from adopting the key factual and legal findings determined

in that decision.  *Burch v. Masiz* (*In re Vaso Active Pharmaceuticals, Inc.*), 500 B.R. 384, 399

(Bankr. D. Del. 2013), *aff'd*, 537 B.R. 182 (D. Del. 2015) ("This Court is guided by the law of

the case doctrine to keep its decisions consistent with . . . its findings within its Judgment

granting the first motion. . . .  A mere appeal of that ruling to the District Court does not

automatically render the Judgment 'clearly erroneous,' nor does the appeal of the first motion

prevent this Court from moving forward in its present adversary proceeding."); *see also LNV*

*Corp.*, 2020 WL 224569, at *3 ("An appeal of a Court's prior ruling does not render the law of

the case doctrine inapplicable.  [Defendant] has not cited any new facts or law that would render

the Court's prior ruling . . . 'clearly erroneous' so as to render the law of the case doctrine

inapplicable.").

## II.    THE LITIGATION TRUSTEE IS ENTITLED TO SUMMARY JUDGMENT ON ITS CLAIMS UNDER SECTION 7031.

### A.    This Court Already Has Determined That Crown Is an Assignee of Void Invoices.

In disallowing Crown's claim, the Court determined that "Crown's claims should be

treated as that of an assignee."  Ex. J at 11.  The Court then relied on a bedrock principle of

assignment:  "An assignment of a contract results in the assignee stepping into the shoes of the

assignor; receiving no more and no less than the assignor."  Ex. J at 11.  Based on this and other

factual and legal conclusions, the Court found:

> I have determined that the Synflex claims are invalid.  Synflex was not a licensed
> contractor and, however harsh the result may be, is barred from recovery under
> [Section 7031(a)].  Synflex assigned its rights to payment to Crown under the
> factoring agreement.  This factoring agreement provided that Crown would
> purchase invoices from Synflex and would obtain the same rights that Synflex
> had.  This is an assignment and should be treated as such.  The Synflex claims are
> unenforceable.  It follows, then, that Crown, as an assignee of Synflex, also lacks

7

an enforceable claim.  The Court does not need to consider the validity of an
alleged independent contract, as the claims underlying the contract are void.

Ex. J at 11.

As noted above, the Court's determination is law of the case that should control in this

adversary proceeding.  As a result, it is undisputed that:  (i) Synflex was unlicensed when it

performed work on the Project; (ii) as a result, under California law, the invoices issued by

Synflex are void; and (iii) any alleged independent contract between ATMGP and Crown is

irrelevant because Synflex's invoices and any claims to collect on any of them are void.

> **B.    The Litigation Trustee Is Entitled to Recover Payments Made to Crown on
> Account of the Void Synflex Invoices.**

Section 7031(b) is the "sword" counterpart to Section 7031(a)'s "shield."  *See* Ex. J at 7

(citing *Gottlieb v. Gemilyan (In re Yurdumyan)*, Adv. No. 1:18-ap-01030-MT, 2018 WL

4042817 (Bankr. C.D. Cal. Aug. 23, 2018)).  Section 7031(b) permits "a hiring party to recover

amounts paid to an unlicensed contractor."  *See id.* (citing *Gottlieb*, 2018 WL 4042817, at *2);

*see also* Cal. Bus. & Prof. Code § 7031(b) ("[A] person who utilizes the services of an

unlicensed contractor may bring an action in any court of competent jurisdiction in this state to

recover all compensation paid to the unlicensed contractor for performance of any act or

contract.").

Here, ATMGP paid $3,575,828.39 directly to <u>Crown</u> as assignee of invoices Synflex

issued to ATMGP for work Synflex performed while it was unlicensed.  As with the analysis

under Section 7031(a), for the purposes of Section 7031(b), Crown stands in the shoes of Synflex

with respect to the Synflex invoices it was assigned, and which were thereafter paid directly to

Crown.  Crown therefore is the proper party (and the only appropriate party) from which to

recover amounts ATMGP paid to Crown on account of the void invoices.  The Court should

grant summary judgment in favor of the Litigation Trustee on its claim for statutory

disgorgement. *See* ECF No. 1 (Complaint) at ¶¶ 42-50 (Fourth Cause of Action).

> **C.    Crown's Arguments Neither Defeat the Litigation Trustee's Entitlement to Summary Judgment nor Warrant Summary Judgment in Crown's Favor.**

Crown argues that Section 7031(b) does not apply to it for two reasons. First, Crown

argues that the plain language of the statute "only applies to payments to unlicensed contractors."

Crown MSJ at ¶ 22.[5] What Crown ignores, however, is its status as assignee. For the purposes

of payment of the invoices, Crown <u>is</u> Synflex by virtue of the assignment. *See, e.g.*, *In re*

*Fleming Cos., Inc.*, No. 03-10945(MFW), 2004 WL 385517, at *2 (Bankr. D. Del. Feb. 27,

2004), *subsequently aff'd*, 499 F.3d 300 (3d Cir. 2007) (quoting *Medtronic Ave, Inc. v. Advanced*

*Cardiovascular Sys., Inc.*, 247 F.3d 44, 60 (3d Cir. 2001)) ("An assignment is intended to change

only who performs an obligation, not the obligation to be performed."). But Crown seeks to pick

and choose when this principle applies: when it filed its claim in bankruptcy, Crown was happy

to stand in the shoes of Synflex and demand money owed on account of <u>Synflex invoices</u> for

which Crown was assignee. Now that Crown's position as assignee of Synflex puts it at risk

under the plain prohibitions of Section 7031(b), Crown claims it is not Synflex's assignee and

did not collect Synflex's invoices – or if it did, that it is not subject to the disgorgement that

Synflex would suffer, had it been paid.

Crown cannot have it both ways. It is beyond dispute that the Synflex invoices are void.

The Litigation Trustee would no doubt have a successful claim against Synflex to recover the

amounts that ATMGP paid on those invoices – had those amounts been paid to Synflex. The

---

[5]    Citations preceded by "Crown MSJ" are to Crown's Memorandum of Law in Support of Motion for Summary Judgment, dated April 21, 2020. *See* ECF No. 12-1.

Synflex invoices that Crown factored are void, on the same principles, under the same statutory scheme and for the same reasons.  Yet Crown seeks to circumvent Section 7031(b) (and the clear and important policy that it effectuates) to justify retaining the windfall of $3,575,828.39 it received from ATMGP for invoices that are and were when paid void as a matter of applicable California law.  Permitting Crown to do so would undermine the strong public policy that Section 7031 vindicates.  If Crown could avoid liability under Section 7031(b), every unlicensed contractor in California could evade the statute by factoring its invoices, and Section 7031 would no longer have the vital prophylactic effect for which the California legislature created it.  Put simply, Crown has no basis to retain millions of dollars it was paid on account of void invoices.

Crown's reliance on *MW Erectors, Inc. v. Niederhauser Ornamental & Metal Works Co.* is misplaced.  36 Cal. 4th 412 (Cal. 2005).  That case partially upheld and partially denied a claim seeking to avoid payment under Section 7031(a) because Section 7031(a) only applies if the contractor was unlicensed during performance and the contractor was only unlicensed during the performance of the first but not the second contract at issue.  *Id.* at 425, 430-31, 440.  *MW Erectors*, however, says nothing about whether an assignee is the proper defendant in a claim under Section 7031(b) as to payments made pursuant to its assignment and is therefore irrelevant.

Second, Crown wrongly argues that Section 9-404(b) of the Uniform Commercial Code prevents the Litigation Trustee from bringing its Section 7031(b) claim against Crown.  Section 9-404(b) is inapposite on its face.  It provides that "the claim of an account debtor against an assignor may be asserted against an assignee under subsection (a) only to reduce the amount the account debtor owes."  *See* U.C.C. § 9-404(b).  While the Litigation Trustee here is representing the "account debtor," it is not seeking to recover on a claim against Synflex (assignor), but rather

10

seek recovery against Crown (assignee) for amounts paid to Crown.  As Crown admits, "[t]he Litigation Trustee's complaint makes clear it seeks to recover payments to Crown, not any monies paid to Synflex."  Crown MSJ at ¶ 22.  Crown's status as assignee makes it a proper target under Section 7031(b), but the claim itself – to recover $3,575,828.39 ATMGP paid to Crown on account of the void Synflex invoices – is against Crown for amounts paid to and therefore owed by Crown, and therefore is not a claim subject to Section 9-404(b) at all.

*Michelin Tires (Canada) Ltd. v. First National Bank of Boston*, an out-of-circuit case on which Crown relies, is inapposite for the same reason: it addressed a restitution claim that should have been asserted against the original contractor, not a claim properly asserted against the bank for payments made to it.  666 F.2d 673 (1st Cir. 1981).  Section 7031(b) creates a unique remedy to effectuate an important public policy. Here that section is properly asserted against Crown for the amounts ATMGP paid directly to Crown, as Synflex's assignee, on account of invoices that were void as a consequence of Synflex's unlicensed status.

## III.   THE LITIGATION TRUSTEE IS ENTITLED TO SUMMARY JUDGMENT ON ITS CLAIM FOR TURNOVER.

Section 542 of the Bankruptcy Code provides that

> an entity, other than a custodian, in possession, custody, or control, during the case, of property that the trustee may use, sell, or lease under section 363 of this title, or that the debtor may exempt under section 522 of this title, shall deliver to the trustee, and account for, such property or the value of such property, unless such property is of inconsequential value to the estate.

11 U.S.C. § 542(a).  "To establish a turnover claim, the party seeking turnover has the burden of showing '(1) the property is in the possession, custody or control of another entity; (2) the property can be used in accordance with the provisions of [S]ection 363; and (3) the property has more than inconsequential value to the debtor's estate.'"  *Zazzali v. Minert* (*In re DBSI*), 468

11

B.R. 663, 669 (Bankr. D. Del. 2011) (quoting *Newman v. Tybert* (*In re Steel Wheels Transport, LLC*), Adv. No. 07-02675 DHS, 2011 WL 5900958, at *5 (Bankr. D.N.J. Oct. 28, 2011)).

The party seeking turnover also must "allege an undisputed right to recover the claimed debt." *Am. Home Mortg. Corp. v. Showcase of Agents, LLC* (*In re Am. Home Mortg. Holding*), 458 B.R. 161, 169 (Bankr. D. Del. 2011). In the Third Circuit, turnover is inappropriate if there is a legitimate dispute over the property's ownership, which exists "[i]f there is a genuine issue of a material fact that bears upon the debtor's liability, or a meritorious contention as to the application of law to undisputed facts." *B.D.W. Assoc's Inc. v. Busy Beaver Bldg. Ctrs., Inc.*, 865 F.2d 65, 66 (3d Cir. 1989). In other words, "the bankruptcy court must determine whether there is an objective basis for either a factual or a legal dispute as to the validity of the debt." *Giuliano v. Fairfield Grp. Healthcare Ctrs. Ltd. P'Ship* (*In re Lexington Healthcare Grp. Inc.*), 363 B.R. 713, 716 (Bankr. D. Del. 2007).

The Litigation Trustee has established all three elements of a turnover claim. First, it is undisputed that Crown has $3,575,828.39 of ATMGP's money. Second, it is undisputed that the Litigation Trustee could use the money held by Crown in accordance with Section 363. Third, it is undisputed that the $3,575,828.39 has more than inconsequential value to the estate. The amount at issue, if repatriated, would be added to amounts available for distribution to creditors, and would materially increase the distributions they receive under the Plan approved by the Court.

The Litigation Trustee also has established that there is no legitimate dispute that the $3,575,828.39 is property of the estate. Here too, the dispositive and inescapable fact is that the Synflex invoices that money was paid against were, at the time of payment, void. It is also not subject to genuine dispute that Crown received payment on account of those void invoices. That

12

conclusion flows from the prior determination that Crown was an assignee of Synflex, and that what it was paid was the obligation that ATMGP owed to Synflex – which had previously been assigned to Crown. Crown has no "meritorious contention" that there is any basis on which Crown is entitled to keep the $3,575,828.39. Therefore, the money is properly part of the bankruptcy estate and turnover is appropriate.

IV.    **NONE OF CROWN'S ARGUMENTS ENTITLE IT TO SUMMARY JUDGMENT ON THE TURNOVER CLAIM.**

Crown offers several arguments in support of its motion for summary judgment on the Litigation Trustee's turnover count. Each is and all of them together are, insufficient. At the threshold, although Crown acknowledges the Court's ruling sustaining the objection to its claim, it fails to recognize or discuss the law of the case effect of that ruling here.

A.    **The Assignment Notice Does Not Provide a Basis for ATMGP's Payments to Crown.**

Indeed, Crown rehashes here the very same arguments it made and the Court rejected in response to the Trustee's objection to its claim. Nonetheless, it perseveres in asserting that ATMGP's payments to Crown were on account of the Assignment Notice – which Crown refers to as the No-Offset Agreement and again asserts constituted an independent contract. The Court, however, previously determined that it "d[id] not need to consider the validity of an alleged independent contract, as the claims underlying the contract are void." Ex. J at 11. The same logic defeats Crown's position here – the payments ATMGP made to Crown were on account of and in satisfaction of the Synflex invoices, which are now conclusively established to be and to have been void. As a matter of governing California law, those invoices provide no basis for payment.

Though the Court found it unnecessary to reach the question in sustaining the Trustees objection to Crown's claim, undisputed facts show that the Assignment Notice is not a contract.

13

It is hornbook law that the elements required to prove a contract are;  offer, acceptance, and consideration.  *See, e.g.*, *Dynacraft Bsc, Inc. v. Pac. Cycle, Inc.*, No. 16-cv-04334-BLF, 2017 WL 57341, at *2 (N.D. Cal. Jan. 5, 2017).[6]  Here, the Assignment Notice contained none of these key elements.  The Assignment Notice contains no offer from Crown.  Indeed, to the contrary, the Assignment Notice declares that Synflex "has assigned all rights, title, and interest in its accounts receivable" to Crown.  Ex. F at 1.  Without an offer, there was nothing for ATMGP to accept.

Nor does the Assignment Notice recite or reference consideration.  Crown argues that "[t]o provide factoring services, Crown required the [Assignment Notice] with [ATMGP]."  Crown MSJ at ¶ 30.  But the actual text of the Assignment Notice states that Synflex "**has** assigned all rights, title, and interest in its accounts receivable" to Crown and requests that ATMGP direct payment to Crown's bank account.  Crown and Synflex had **already entered** into the Factoring Agreement.  Ex. F at 1 ("This will inform you that [Synflex] has assigned all rights, title, and interest in its accounts receivable to [Crown].").  Crown provided no evidence that its factoring relationship with Synflex was conditional.  Further, for a detriment to constitute contractual consideration it must be bargained for between the parties. Crown's payment to Synflex was not consideration for anything it received from ATMGP.  Rather, that payment was the bargained for consideration for the assignment Crown received from Synflex.  It did not pay Synflex pursuant to any agreement with ATMGP.  *See CRV Imperial-Worthington, LP v. Gemini Ins. Co.*, 770 F. Supp. 2d 1074, 1077 (S.D. Cal. 2010) ("For consideration to be valid, the

---

[6]     Crown has asserted in the past that the question of whether the Assignment Notice is a contract should be governed by Texas law.  However, the fundamental principles of contract are the same under both California and Texas law.  *See, e.g.*, *Zars v Brownlow*, No. 07-07-00303-CV, 2013 WL 3355660, at *3 (Tex. App. June 28, 2013).

14

promisee . . . must suffer (or agree to suffer) and the benefit or prejudice must actually be bargained for as the exchange for the promise.").  Finally, the only action the Assignment Notice called for was to change the account to which ATMGP would wire funds for payment of the Synflex invoices, which it was previously bound to do.  *Rockridge Trust v. Wells Fargo, N.A.*, 985 F. Supp. 2d 1110, 1142 (N.D. Cal. 2013) ("Doing or promising to do what one is already legally bound to do cannot be consideration for a promise [under California law].").  If the Assignment Notice is a contract (which the Trustee alleges it is not), it is a contract under which ATMGP promised to wire funds that were due to Synflex directly to Crown and attest to the status of invoices – and such an arrangement provides no contractual (or for that matter any other) basis for payment to Crown on invoices which are and were void.[7]

B.       **The Status of the Synflex Contracts with ATMGP Is Irrelevant**

Crown also argues that turnover is inappropriate because "[t]he payments and the underlying contract between Synflex and the Debtor were not void, even though Synflex was unlicensed."  Crown MSJ at ¶ 32.  Crown's points are incorrect and irrelevant, respectively.  The payments ATMGP made to Crown on account of void invoices are not properly obtained or retained by Crown, since its assignor had no legal basis to claim (or keep) payment – neither did Crown.  The underlying invoices are indisputably unenforceable as a matter of clear California law in the hands of Synflex (as this Court's prior decision established) and as to any payments on invoices to Synflex, the Litigation Trustee has a cause of action against Synflex under Section 7031(b).  But, the Trustee is not seeking from Crown any recoupment or disgorgement of amounts ATMGP paid to Synflex.

---

[7]        Indeed, it would be a contract that was not breached at all, since Crown nowhere argues that ATMGP failed in either of its tasks spelled out in the letter.

In addition, Crown argues that "the Litigation Trustee uses Section 7031 as the basis for its assertion that the contract between Synflex and the Debtor and the invoices created for work done under the contract are void."  Crown MSJ at ¶¶ 32-34.  Crown misstates the Litigation Trustee's position.  Section 7031 does render void the <u>invoices</u> that Synflex issued for work performed while unlicensed.  *See Wilson v. Steele*, 259 Cal. Rptr. 851, 856 (Cal. Ct. App. 1989) (invoices issued for work performed by an unlicensed contractor are "void and illegal").  As a result, Crown, as assignee of the void invoices, had no basis to receive payment from ATMGP.  Granting the Litigation Trustee's claim for turnover requires nothing more than enforcing the plain language of a California statute. The validity and status of the underlying contract is not relevant; neither Section 7031(b) nor any other section of the California Business and Professions Code addresses the status of underlying contracts for construction work – what it addresses is the right to payment for work performed while a contractors lacks proper licenses.

### C.    The Turnover Statute Is Not Inapplicable

If the Court follows the prior decision and holds that recoupment is provided for and available against Crown under Section 7031(b), it need not even reach the turnover issue.  But, if it does reach the issue, it should find that turnover is appropriate here.

Crown argues that the Complaint does not specify whether turnover is sought under Section 542(a) or (b), but that, in any event, neither applies.  Crown MSJ at ¶¶ 35-36.  Crown is wrong on all counts.  It is clear from the allegations in the Complaint that the turnover claim is based on Section 542(a), as it alleges that the "payments" made to Crown "were properly the property of ATMGP's estate and are subject to turnover . . . ."  As discussed above, turnover here is appropriate because there is no "genuine issue of a material fact that bears upon the debtor's liability, or a meritorious contention as to the application of law to undisputed facts." *B.D.W. Assoc's Inc.*, 865 F.2d at 66.

16

Because, as is established and discussed at length above, the invoices for which Crown was paid were void at the time of payment, Crown was paid with monies of ATMGP to which it had no right and for which it is established it had no valid claim.  Thus, the monies Crown was paid are properly assets of ATMGP, and therefore of the Debtors' estates, and are appropriately the subject of a turnover proceeding.

The cases on which Crown relies have no bearing on the issue.  As explained above, the Third Circuit has set out its standard for determining when a dispute over the ownership of the property precludes turnover, and therefore Crown's citation to Nevada case law has no force. *Stanziale v. Pepper Hamilton LLP* (*In re Student Finance Corporation*)*, cited by Crown, involved a motion to dismiss, not a motion for summary judgment.  335 B.R. 539 (D. Del. 2005). Here, Crown answered the Complaint and made no motion to dismiss the turnover claim as premature.  At this phase, the Court is able to determine that there is no genuine dispute that the $3,575,828.39 belongs to the estate and grant summary judgment on the turnover claim in favor of the Litigation Trustee.  Crown's suggestion that the Court resolve the dispute over the ownership of the $3,575,828.39 but force the Litigation Trustee to initiate yet another action to force turnover of those proceeds would be a waste of judicial resources and would unnecessarily and inappropriately delay resolution of this claim and of the Estate, and cause unnecessary burden and expense.

## CONCLUSION

For the reasons set forth above, the Litigation Trustee respectfully requests that this Court deny Crown's motion for summary judgment and grant the Litigation Trustee's motion for summary judgment on all counts.  The Litigation Trustee further requests that if this Court denies both parties' motion for summary judgment, that the Court set a date for trial at the Court's convenience.

17

May 5, 2020
Wilmington, Delaware

Respectfully Submitted,

**MORRIS, NICHOLS, ARSHT & TUNNELL
LLP**
*/s/ Andrew R. Remming*
Robert J. Dehney (No. 3578)
Andrew R. Remming (No. 5120)
1201 N. Market Street
PO Box 1347
Wilmington, DE 19899-1347
Telephone: (302) 658-9200
Facsimile: (302) 658-3989
E-mail: rdehney@mnat.com
aremming@mnat.com

- and -

**HOGAN LOVELLS US LLP**
David Dunn (admitted *pro hac vice*)
Allison M. Wuertz (admitted *pro hac vice*)
390 Madison Avenue
New York, NY 10017
Telephone: (212) 918-3000
Facsimile: (212) 918-3100
E-mail:     david.dunn@hoganlovells.com
              allison.wuertz@hoganlovells.com

*Counsel to Drivetrain, LLC as Litigation Trustee*

18