IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re:<br><br>ABEINSA HOLDING, INC., et al.,<br><br>Reorganized and Liquidating Debtors. | Chapter 11<br><br>Case No. 16-10790 (LSS) |
| ABEINSA LITIGATION TRUST,<br><br>Plaintiff,<br><br>v.<br><br>CROWN FINANCIAL, LLC.<br><br>Defendant. | Adv. No. 18-50316 (LSS)<br><br>Re: Docket No. 12, 14 |

**OPINION**

**Introduction**

  Before me are cross-motions for summary judgment on a complaint seeking disgorgement of prepetition payments made by Debtor Abener Teyma Mojave General Partnership ("Abener Teyma" or "Debtor") to Crown Financial, LLC ("Crown") on invoices issued to Debtor by Synflex Insulations, LLC ("Synflex") for construction work done on Debtor's Mojave Solar Power Plan Project. Debtor paid Crown (rather than Synflex) because Crown purchased the underlying invoices via a factoring agreement.

  Plaintiff alleges no dissatisfaction with the work performed. Rather, its complaint is primarily based on a California statute that punishes unlicensed contractors who perform work in California. Subsection (a) of the California statute prohibits a contractor from bringing an action to recover compensation for performance of its work unless it can allege

that it was duly licensed at all times during construction. Subsection (b) of the California statute provides that the counter-contract party can bring an action to recover compensation paid to that unlicensed contractor. It is undisputed that Synflex was unlicensed when it performed the work on the Mojave Solar Power Plan Project.

Based on subsection (a) of the statute and Crown's status as assignee of Synflex, Plaintiff already prevailed in its objection to Synflex's proof of claim based on unpaid invoices. Now, Plaintiff seeks disgorgement under subsection (b) of the amounts Debtor paid directly to Crown. As an alternative theory, Plaintiff seeks recovery under § 542 of the Bankruptcy Code. Because the California statute does not authorize a suit against any party other than the unlicensed contractor, and/or because a suit against an assignee of commercial paper cannot seek affirmative recoveries, the California statute is not available to Plaintiff in this adversary proceeding. And, because its turnover action is based on its state law claim, Plaintiff does not prevail on that theory either.

**FACTS**

Both Debtor and Crown assert that there are no material facts in dispute and I agree.

In 2013, Debtor, as general contractor, and Synflex executed three written subcontract agreements by which Synflex was to supply and install insulation and other materials for a steam generator at Debtor's Mojave Solar Power Plant Project in San Bernardino County, California.[1] Synflex did not have proper licensure from the California Contractor State License Board when it executed the agreements or performed the work on the power plant.[2]

---

[1] Declaration of Andrew R. Remming, ECF No. 16 ("Remming Decl.") Exs. A-C.
[2] Remming Decl. Ex. D.

2

In April 2014, Crown and Synflex executed an Account Purchase Agreement which gave Crown the option to purchase Synflex's account receivables at 80% of the invoice face value and to collect those invoices directly from Synflex's customers.[3] Crown sent Debtor a letter informing it of the assignment ("the April Letter Agreement") which Debtor counter-signed acknowledging the factoring arrangement and five specific invoices that Crown was purchasing.[4] Thereafter, Crown elected to purchase additional invoices under the Account Purchase Agreement, which, together with the initial five invoices, totaled $5.41 million.[5] Crown informed Debtor of these additional purchases and Debtor "[c]onfirmed and [a]greed" to each of these invoices.[6]

Consistent with its acknowledgement of the Account Purchase Agreement, prepetition Debtor paid Crown $3.58 million on account of the purchased invoices.[7] As of the filing of the bankruptcy proceeding, $2,022,527 of the purchased invoices remained unpaid.[8]

## PROCEDURAL BACKGROUND

### The Bankruptcy Case

On March 29, 2016, Debtor, together with 13 affiliated entities, filed for relief under chapter 11 of the Bankruptcy Code. All debtors remained in possession. Debtors were organized into four groups and filed plans of reorganization and liquidation that dealt with each of these four groups. The court confirmed Debtors' Modified First Amended Plans of

---

[3] Declaration of Philip R. Tribe, ECF No. 12-2 ("Tribe Decl.") ¶ 5, Ex. A; Remming Ex. E.
[4] Tribe Decl. ¶ 6-9, Exs. B-C.
[5] Tribe Decl. ¶ 12, 13, Ex. E.
[6] Tribe Decl. ¶ 12, Ex. A.
[7] Tribe Decl. ¶ 14.
[8] Tribe Decl. ¶ 14.

3

Reorganization and Liquidation by Order dated December 15, 2016 [ECF No. 1042] and the plans became effective on March 31, 2017 [ECF No. 1262].

Debtor was one of the EPC Reorganizing Debtors. Plaintiff, Abeinsa Litigation Trust ("Trust") was created in connection with the confirmation of Debtor's plan to pursue causes of action, including causes of action against Crown. Drivetrain, LLC was appointed as the trustee of the Trust.

**The Claim Objection**

On June 20, 2016, both Synflex and Crown filed proofs of claims in Debtor's bankruptcy case. Synflex filed a Proof of Claim in the amount of $11,192,133.12 for insulation materials, supplies and services. Crown filed a Proof of Claim in the amount of $2,022,527.00 on account of the unpaid invoices it had purchased pursuant to the Account Purchase Agreement. Objections were filed to both claims on the basis that the underlying debt was unenforceable due to Synflex's failure to hold a proper California contractor license during the course of its work on the Mojave Solar Power Plant.[9]

On March 26, 2019, the bankruptcy court sustained the objections to both proofs of claim. In a written opinion,[10] the bankruptcy court (Judge Kevin J. Carey) disallowed Synflex's claims. Specifically, the bankruptcy court ruled:

> I have determined that the Synflex claims are invalid. Synflex was not a licensed contractor and, however harsh the result may be, is barred from recovery under Cal. Bus. & Prof. Code § 7031. Synflex assigned its rights to payment to Crown under the factoring agreement. This factoring agreement provided that Crown would purchase invoices from Synflex and would obtain the same rights that Synflex had. This is an assignment and should be treated as such. The Synflex claims are unenforceable. It follows, then, that Crown, as an assignee of Synflex, also lacks an enforceable claim.

---

[9] The Responsible Person for the EPC Reorganized Debtors filed the objection to Synflex's proof of claim and Plaintiff filed the objection to Crown's proof of claim.
[10] *In re Abeinsa Holding Inc.*, No. 16-10790, 2019 WL 1400175 (Bankr. D. Del. Mar. 26, 2019) ("*Abeinsa I*").

4

> The Court does not need to consider the validity of an alleged independent contract, as the claims underlying the contract are void.[11]

Accordingly, the bankruptcy court entered an order disallowing and expunging both proofs of claim.[12] Crown (but, not Synflex) appealed.

On appeal, Judge Connolly affirmed the bankruptcy court's ruling.[13] Judge Connolly held that Crown, as Synflex's assignee, took only what rights Synflex had in the invoices.[14] Further, Judge Connolly ruled that the April Letter Agreement only confirmed that the payment of the invoices was not subject to an offset, discharge or dispute, but because the invoices were void under § 7031 of the California Business and Professions Code, there were no invoices to collect.[15] Accordingly, he agreed with the bankruptcy court that he need not consider the validity of the April Letter Agreement in connection with Crown's proof of claim.[16] Crown appealed again.

Crown focused its appeal to the Third Circuit on its rights under the April Letter Agreement as opposed to its rights as an assignee.[17] The Circuit Court of Appeals ruled that the April Letter Agreement was unenforceable.[18] In doing so, it recognized several principles of California law: (i) contractors must be licensed to perform construction work within the state, (ii) the failure to hold a license comes with "a severe consequence," that is the loss of the right to be compensated for the work, (iii) a contract with an unlawful object

---

[11] *Id.* at *6.
[12] *Id.* at *7.
[13] *Crown Fin., LLC v. Drivetrain, LLC (In re Abeinsa Holding Inc.)*, No. BR 16-10790, 2020 WL 6261632 (D. Del. Oct. 23, 2020).
[14] *Id.* at *3 ("Thus, an assignee cannot recover more than the assignor could recover.").
[15] *Id.*
[16] *Id.*
[17] *In re Abeinsa Holding Inc.*, No. 20-3333, 2021 WL 3909984 at *4, n.3 (3d Cir. Sep. 1, 2021).
[18] *Id.* at *4-5.

5

is void and (iv) California courts will not enforce illegal and void contracts.[19] Applying those principles, the court held that the April Letter Agreement is void and unenforceable because its object is to pay Crown for unlicensed construction work that Synflex performed.[20] To hold otherwise, the court ruled, would permit an unlicensed contractor to "easily evade" California's admittedly draconian statute.[21]

**The Adversary Proceeding**

On March 14, 2018, Abeinsa Litigation Trust filed the complaint commencing this adversary proceeding against Crown. It sounds in four counts. Count I is for disallowance of Crown's proof of claim. Count II is for turnover. Count III seeks to bar payment of the open invoices that Crown purchased from Synflex. Count IV is for statutory disgorgement under California Business & Professions Code § 7031(b).

On May 5, 2020, Crown filed a motion for summary judgment on Counts II and IV[22] together with its opening brief and appendix, containing the Tribe Declaration and other exhibits.[23] Also on May 5, 2020, Plaintiff filed its own motion for summary judgment together with its opening brief and the Remming Declaration with attached documents.[24]

---

[19] *Id.* at * 3-4.
[20] *Id.* at * 4.
[21] *Id.*
[22] At the time, Judge Carey had already ruled on the objection to Crown's proof of claim. Crown took the position that the claim litigation would be determined in that context. It has been, rendering Counts I and III moot.
[23] Crown Financial's Motion for Summary Judgment [ECF No. 12]; Crown Memorandum of Law in Support of Motion for Summary Judgment [ECF No. 12-1] ("Defendant's Opening Brief"); Appendix to Crown Financial Motion for Summary Judgment Volume 1 of 1 (Crown Appendix) [ECF No. 12-2].
[24] Motion for Summary Judgment [ECF No. 14]; Memorandum of Law in Opposition to Crown Financial, LLC's Motion for Summary Judgment and in Support of the Cross-Motion for Summary Judgment of Drivetrain, as Litigation Trustee [ECF No.15] ("Plaintiff's Opening/Answering Brief"); Declaration of Andrew R. Remming [ECF No. 16].

Combined answering and reply briefs were filed.[25] A status conference was held and the matter was taken under advisement.

**BANKRUPTCY JURISDICTION**

The Court has jurisdiction over this adversary proceeding pursuant to 28 U.S.C. § 1334. Venue of this proceeding is proper pursuant to 28 U.S.C. § 1409.

In the Complaint, Plaintiff asserts that the adversary proceeding is a core proceeding and the court may enter final orders consistent with Article III of the United States Constitution.[26] In its Motion for Summary Judgment, Crown asserts that the matter is non-core, but it consents to entry of a final order or judgment by this court.[27]

It strikes me that Count II is core as Plaintiff seeks turnover and invokes § 542(a) of the Bankruptcy Code. But, admittedly, Count II could be a non-core matter because the turnover is based on a California statute. Count IV, on the other hand, is undeniably non-core as it seeks disgorgement based on California law and the cause of action clearly exists outside of bankruptcy. Further, neither Count II nor Count IV need to be decided in the context of the allowance or disallowance of Crown's proof of claim because, in fact, those counts were not addressed by either the bankruptcy court, the district court or the circuit court in ruling on Crown's proof of claim.

Regardless, as Plaintiff does not object to this court issuing a final order[28] and Defendant expressly consents, I may enter a final order in this adversary proceeding.

---

[25] Crown's Response and Reply on Cross-Motions for Summary Judgment [ECF No. 19] ("Defendant's Reply Brief"); Reply Memorandum of Law in Further Support of the Cross-Motion for Summary Judgment of Drivetrain LLC, as Litigation Trustee [ECF No. 20] ("Plaintiff's Reply Brief").
[26] Compl. ¶ 2.
[27] Motion for Summary Judgment [ECF No. 12] ¶ 2.
[28] Del. Bankr. L.R. 7008-1.

7

## DISCUSSION

### Standard

Rule 56 of the Federal Rules of Civil Procedure (incorporated into the Bankruptcy Code through Federal Rule of Bankruptcy Procedure 7056) provides that summary judgment should be granted where the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue of material fact, and that the movant is entitled to judgment as a matter of law.[29] The movant bears the initial burden of demonstrating an absence of disputed material facts and the reasons that it is entitled to judgment.[30] The court does not weigh evidence and determine the truth of the matter at the summary judgment stage. Rather, the court determines whether there is a genuine dispute of material fact.[31]

### The Statutory Disgorgement Claim

Because the Trustee's turnover claim relies on its disgorgement claim, I will address Count IV first.

Plaintiff argues that it is entitled to recover from Crown the amounts Debtor paid to satisfy the invoices submitted by Synflex for work done on the Mojave power project. Plaintiff argues that § 7031(b) of the California Business and Professions Code provides him with two remedies: (i) the ability to defeat any claim for payment of unpaid invoices and (ii) the ability to recover for any invoices already paid. Plaintiff argues that for the same reasons it was successful (through appeals) in disallowing Crown's proof of claim, it should

---

[29] Fed. R. Civ. P. 56(c); *accord Tolliver v. Trinity Par. Found.*, 723 F. App'x 166, 170 (3d Cir. 2018); *In re Pharmacy Corp. of Am./Askari Consol. Litig.*, Civil Action No. 16-1123-RGA, 2020 U.S. Dist. LEXIS 71712, at *5 (D. Del. Apr. 23, 2020).
[30] *Pharmacy Corp.* at *2.
[31] *Argus Mgmt. Group v. GAB Robins, Inc. (In re CVEO Corp.)*, 327 B.R. 210, 214 (Bankr. D. Del. 2005) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986)).

8

be successful in recovering amounts Debtor actually paid to Crown for services provided by the unlicensed Synflex. It argues that if Crown is permitted to avoid liability under § 7031(b) every unlicensed contractor in California could evade the effect of the statute by factoring its invoices, and § 7031 would no longer have the vital prophylactic effect for which the California legislature created it.

Crown argues that § 7031(b) permits an affirmative recovery only from an unlicensed contractor, which it is not. Crown further argues that as an assignee of commercial paper, § 9404(b) of California's commercial code protects it from an affirmative claim of an account debtor such as Plaintiff.

**Analysis**

Plaintiff is correct that § 7031 provides two remedies to a party that has dealt with an unlicensed contractor. Section 7031 provides, in relevant part:

> (a) Except as provided in subdivision (e), no person engaged in the business or acting in the capacity of a contractor, may bring or maintain any action, or recover in law or equity in any action, in any court of this state for the collection of compensation for the performance of any act or contract where a license is required by this chapter without alleging that they were a duly licensed contractor at all times during the performance of that act or contract regardless of the merits of the cause of action brought by the person, except that this prohibition shall not apply to contractors who are each individually licensed under this chapter but who fail to comply with Section 7029.
>
> (b) Except as provided in subdivision (e), a person who utilizes the services of an unlicensed contractor may bring an action in any court of competent jurisdiction in this state to recover all compensation paid to the unlicensed contractor for performance of any act or contract.[32]

As discussed, relying on subsection (a), Plaintiff (or the Responsible Person) has already successfully defeated claims brought by both Synflex and Crown for unpaid invoices.

---

[32] Cal. Bus. &. Prof. Code § 7031.

9

Plaintiff now looks to subsection (b) for an affirmative recovery against Crown. While there is a certain ease in the argument that an analysis of subsection (a) and (b) must lead to the same winner, some reflection shows that this is not so.

Like subsection (a), subsection (b) does not name any wrongdoer other than the unlicensed contractor nor specifically provide for a remedy against any entity other than the unlicensed contractor. On the face of the statute, subsections (a) and (b) provide Plaintiff with a defense to claims brought by Synflex and a disgorgement action against Synflex, the unlicensed contractor, but no defense or remedy against Crown, the factor. Notwithstanding, the bankruptcy court, district court and court of appeals disallowed Crown's claim against the estate for the unpaid invoices based on California law. The courts reached their conclusions for two reasons. First, the bankruptcy court disallowed the claim because Crown was the assignee of the unpaid invoices and could obtain no greater rights than its assignor. Just as Synflex was barred from recovery because its claim was unenforceable, Crown was barred on those same grounds. The district court agreed, finding that the invoices were void. Neither the bankruptcy court nor the district court considered the April Letter Agreement. Second, the court of appeals, which considered only the April Letter Agreement, ruled that it was unenforceable as void because the contract had an unlawful object, noting that California courts will not enforce illegal and void contracts. Crown, therefore, could not recover on its proof of claim as assignee of Synflex or on its alleged independent contract.[33] Given the basis for these rulings, it is appropriate to consider the effect of the assignment on Plaintiff's right to recover on invoices already paid.

---

[33] The Third Circuit assumed for purposes of its analysis that the April Letter Agreement met all of the requisites for a contract, but did not need to decide that.

10

Crown argues that California Commercial Code § 9404 precludes Plaintiff (as an account debtor) from bringing an affirmative claim against it as it is an assignee of commercial paper.[34] Subsections 9404(a) and (b) provide:

> (a) Unless an account debtor has made an enforceable agreement not to assert defenses or claims, and subject to subdivisions (b) to (e), the rights of an assignee are subject to both of the following:
>
> > (1) All terms of the agreement between the account debtor and assignor and any defense or claim in recoupment arising from the transaction that gave rise to the contract; and
> >
> > (2) Any other defense or claim of the account debtor against the assignor which accrues before the account debtor receives a notification of the assignment authenticated by the assignor or the assignee.[35]
>
> (b) Subject to subsection (c) and except as otherwise provided in subsection (d), the claim of an account debtor against an assignor may be asserted against an assignee under subsection (a) only to reduce the amount the account debtor owes.[36]

Taken together, subdivisions (a) and (b) permit an account debtor to assert defenses it has not voluntarily waived against an assignee attempting to collect a debt, but limit an account debtor's affirmative claim to one in recoupment. In other words, an account debtor is not entitled to an affirmative recovery, but can only reduce to zero what it owes to the assignee. Both subsections (a) and (b) have enumerated exceptions which are set forth in subdivisions (c)-(e). The exceptions are for individual account debtors who incurred an obligation primarily for personal or household purposes, certain consumer transactions and for the assignment of health care insurance receivables.[37] None of these exceptions apply here.

---

[34] Synflex's assignment of the invoices to Crown is governed by California's version of Article 9 of the Uniform Commercial Code. Subject to certain exceptions not applicable here, Article 9 "applies to . . . [a] sale of accounts. . . ." Cal. Com. Code § 9109.
[35] Cal. Com. Code § 9404(a).
[36] Cal. Com. Code § 9404(b).
[37] Cal. Com. Code § 9404(c) ("This section is subject to law other than this division which establishes a different rule for an account debtor who is an individual and who incurred the obligation primarily for personal, family, or household purposes."); Cal. Com. Code § 9404(d) ("In a

11

Plaintiff argues that § 9404(b) is not applicable because it does not assert a claim under subdivision (a).[38] Plaintiff further asserts that it is not seeking to recover from Crown amounts paid to Synflex or otherwise hold Crown liable for claims Debtor has against Synflex.[39] Plaintiff's theory of recovery flies in the face of the arguments made in defense of Crown's proof of claim as well as the basis for the courts' rulings sustaining that objection. Plaintiff (and/or the Responsible Person) argued, as it does here, that the April Letter Agreement did not constitute a separate contract between Debtor and Crown because it did not meet the elements necessary to prove a contract: offer, acceptance and consideration.[40] Thus, any claim against Crown can only be made as Synflex's assignee of the invoices.

Plaintiff also argues that it is not bringing a claim that falls under § 9404(a) as Crown received payments directly from Debtor.[41] Plaintiff's position is that its claim against Crown is a direct claim against Crown for payments made by Debtor on account of the void invoices and so Plaintiff can appropriately "recoup" those payments from Crown.[42] Though not fleshed out, this argument appears to be based on an argument that § 7031 permits a direct action against Crown as the recipient of the payments. But, as set forth above, § 7031,

---

consumer transaction, if a record evidences the account debtor's obligation, law other than this division requires that the record include a statement to the effect that the account debtor's recovery against an assignee with respect to claims and defenses against the assignor may not exceed amounts paid by the account debtor under the record, and the record does not include such a statement, the extent to which a claim of an account debtor against the assignor may be asserted against an assignee is determined as if the record included such a statement."); Cal. Com. Code § 9404(e) ("This section does not apply to an assignment of a health care insurance receivable.").

[38] Plaintiff's Reply Brief 3 (Plaintiff contends that its claim "'is not the claim of an account debtor against an assignor.' Crown received payments directly from [Debtor] on account of invoices assigned to it that were void at the time the payments were made, and the Litigation Trustee's claim is directly and appropriately against Crown to recoup those payments.").

[39] *Id.* at 3-4.

[40] Plaintiff Opening/Answering Brief 13-14.

[41] Plaintiff Reply Brief 2-3.

[42] *Id.*

on its face, provides no such right of recovery.[43] Section 7031 provides Plaintiff with a claim against Synflex, the unlicensed contractor, which is, in the parlance of the UCC, the account debtor. The only way to extend § 7031 to Crown is by virtue of its status as Synflex's assignee. In these circumstances, Plaintiff offers no reason why California's commercial code, including § 9404(b), does not come into play.

Indeed, the bankruptcy court examined whether the uniform commercial code provided Crown, as a holder in due course, a defense against the objection to its claim. The court concluded it did not because a holder in due course takes the obligation subject to the defenses of "duress, lack of legal capacity, or illegality of the transaction, which under other law, nullifies the obligation of the obligor."[44] As the court found the invoices unenforceable under § 7031, Crown took the Synflex invoices subject to the defense of illegality.[45] The bankruptcy court also relies for its conclusion on *Wilson*.[46] In that case, the California Court of Appeal analyzed California's commercial code's section on holders in due course as a defense to claims brought against an unlicensed contractor under § 7031. It held "[t]o sum up, a contract by an unlicensed contractor is void and illegal, and both a note and deed of trust, if related to a construction contract by an unlicensed contractor, are subject to an illegality defense."[47] The court then remanded the case for the trial court to determine whether the loan (evidenced by the instruments) was for construction. Notably, neither the

---

[43] Plaintiff argues that subdivisions 9404(a) and (b) are "facially inapplicable" because Plaintiff "asserts no claim that falls under subdivision (a). Plaintiff Reply Brief 2-3. At the same time, Plaintiff glosses over the fact that § 7031, on its face, does not provide a cause of action against Crown.
[44] *Abeinsa I* at * 6.
[45] *Id.*
[46] *Wilson v. Steele*, 211 Cal. App. 3d 1053 (1989). The bankruptcy court noted that *Wilson* was cited by the Trustee in its objection to the proofs of claim. *Abeinsa I* at * 6.
[47] *Wilson*, 211 Cal.App.3d at 1062.

bankruptcy court here nor the *Wilson* court ruled that the commercial code was not applicable in the context of § 7031. Applying California's commercial code in similar fashion leads to the conclusion that Plaintiff's affirmative suit to recover amounts paid to Crown is barred. Unlike the holder in due course provision of the commercial code, which creates an exception for illegality to its general rule, § 9404(b) contains no such exception.

Plaintiff argues that the public policy of § 7031(b) must extend to assignees or unlicensed contractors will be able to easily evade the statute. But, there is ample protection against unlicensed contractors factoring all their invoices. As here, a factor faces the distinct possibility that it cannot obtain a recovery on unpaid account receivables. If the factor is prepared to accept the risk that a court will determine that the invoices are void and it may not as a matter of law recover from the account debtor on the purchased invoices, a further threat that it may have to disgorge amounts paid would not appear to be a significant increased deterrent. More importantly, Plaintiff has not explained how allowing the account debtor to recover from the assignee for paid invoices does little—if anything—to deter the contractor who has already been paid the discounted value of those invoices.

Further, Plaintiff has not evaluated (perhaps because he argues that § 9404(b) simply does not apply) the policies underlying the uniform commercial code and Article 9, including modernizing the law governing commercial transactions, promoting uniformity among jurisdictions and providing a consistent structure for current financing transactions.[48]

---

[48] Cal. Com. Code § 1103 (a), (b); *Stone Street Capital, LLC v. California State Lottery Com.*, 165 Cal.App.4th 109, 119 (Ct. of Appeal 2008); 8A Part 1 Lawrence's Anderson on the UCC 3d § 9-101:1 [Rev](2017) ("The aim of this Article is to provide a simple and unified structure within which the immense variety of present-day secured financing transactions can go forward with less cost and greater certainty").

Nor does Plaintiff suggest that § 7031(b) and § 9404(b) conflict, just that § 9404(b) is not applicable.[49]

Because § 7031(b) does not specifically provide for a cause of action against Crown and § 9404(b) prohibits an affirmative recovery against an assignee based on claims against its assignor, I grant Crown's motion for summary judgment.

**Count II: The Turnover Claim**

Section 542(a) of the Bankruptcy Code provides in relevant part:

an entity [ ] in possession, custody, or control, during the case, of property that the trustee may use, sell, or lease under section 363 of this title . . . shall deliver to the

---

[49] California law provides that if "two seemingly inconsistent statutes conflict, the court's role is to harmonize the law." *Stone Street Capital, LLC v. California State Lottery Com.*, 165 App. 4th 109, 118 (2008). If inconsistent statutes cannot be harmonized, a particular provision takes precedence over a more general provision. *Id.* at 19 citing *People v. Gilbert*, 82 Cal.Rptr. 724 (1962) ("where the general statute standing alone would *include the same matter* as the special act, and thus conflict with it, the special act will be considered as an exception to the general statute whether it was passed before or after such general enactment.") (citations omitted) (emphasis supplied).

In *Stone Street*, the California Court of Appeal ruled that California's Lottery Act, which specifically prohibited assignment of lottery proceeds for the final three annual prize payments prevailed over the general provision in California's commercial code permitting assignments of accounts, with the definition of accounts including "winnings in a lottery or other game of chance." The court found that the Lottery Act was a special act dealing with a single subject (the California State Lottery) and that it prohibited the assignment of prize winnings that did not fall into enumerated exceptions. The court also concluded that if the UCC provision permitting assignment prevailed, the Lottery Act would be rendered entirely ineffective.

The opposite result obtains here. While California's unlicensed contractors act is a special act dealing with a single subject (unlicensed contractors' right to be paid), it does not prohibit—or even address—assignment of contractor's rights. California's UCC, on the other hand, while general in nature, specifically addresses assignment. On the facts of this case, the assignment is the more prevalent concept as Crown could not be sued under § 7031 were it not Synflex's assignee. Thus, to the extent the two statutes even conflict—and, I do not believe they actually do as the two statutes do not "include the same matter"—the UCC should prevail in this contest as it is the more specific on assignment. Further, this result does not render § 7031 entirely ineffective. Persons have their remedy against the unlicensed contractor. Query whether Plaintiff could have sued Synflex for payments Debtor made to Crown? Such a suit would certainly have vindicated the underlying purpose of § 7031.

trustee, and account for, such property or the value of such property, unless it is of inconsequential value or benefit to the estate.[50]

The party seeking turnover must establish that: (1) the property is in the possession, custody, or control of another entity, (2) the property can be used in accordance with the provisions of section 363 and (3) the property has more than inconsequential value to the debtor's estate.[51] "Turnover is not appropriate where there is a legitimate dispute over ownership of the property."[52] A bona fide dispute exists when there is "a meritorious contention as to the application of law to undisputed facts."[53]

Plaintiff's argument is straightforward. Plaintiff argues that Crown holds $3,575,828.39 of Debtor's money, which Plaintiff could use and which is not inconsequential in value. Plaintiff claims entitlement to the funds based on § 7031(b).

As I have just determined that Crown is entitled to summary judgment on Count IV and Plaintiff advances no other argument for turnover, I will grant summary judgment on Count II in Defendant's favor as well.

---

[50] 11 U.S.C. § 542(a). *See. Plaintiff's Opening Brief 16* ("It is clear from the allegations in the Complaint that the turnover claims is based on Section 542(a), as it alleges that the "payments" made to Crown "were properly the property of ATMGP's estate and are subject to turnover . . . .").
[51] *Zazzali v. Minert (In re DBSI, Inc.)*, 468 B.R. 663, 669 (Bankr. D. Del. 2011) (quoting *Newman v. Tybert (In re Steel Wheels Transport, LLC)*, Adv. No. 07-02675 DHS, 2011 WL 5900958, at *5 (Bankr. D.N.J. Oct. 28, 2011)).
[52] *Am. Home Mortg. Corp. v. Showcase of Agents, LLC (In re Am. Home Mortg. Holding)*, 458 B.R. 161, 169 (Bankr. D. Del. 2011); *In re Student Finance Corp.*, 335 B.R. 539, 554 (D. Del. 2005) (same); *In re Lexington Healthcare Group, Inc.*, 363 B.R. 713, 716 (Bankr. D. Del. 2007).
[53] *Lexington Healthcare*, 363 B.R. at 716 *citing B.D.W. Assoc's Inc. v. Busy Beaver Bldg. Ctrs., Inc.*, 865 F.2d 65, 66 (3d Cir. 1989) (discussing bona fide dispute for purposes of filing an involuntary petition).

**Conclusion**

For the reasons set forth above, Defendant's Motion for Summary Judgment will be **GRANTED** and Plaintiff's Motion for Summary Judgment will be **DENIED**. A separate order will enter.

Dated: Wilmington, Delaware
October 6, 2022

Laurie Selber Silverstein
United States Bankruptcy Judge